UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:18CR525 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| BRANDON L. SHERIDAN, et al., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, S.J.**:

This matter comes before the Court upon Defendant Justin D. Martin's Motion to Suppress (Doc. 79) and Defendant Brandon L. Sheridan's Motion to Join the suppression motion (Doc. 80). The Court **GRANTS** Defendant Sheridan's Motion to Join. But for the following reasons, the Court **DENIES** the Motion to Suppress in its entirety, without a hearing.

## I. BACKGROUND FACTS

In January of 2018, the City of Akron Police Department, led by the Akron Narcotic Detail, attempted to buy narcotics from Defendant Martin at his home (the "Residence"). To do so, the detectives enlisted a confidential source (the "CS") who previously provided the narcotics team information in the past. During the first week of January 2018, officers conducted their operation. The CS, previously searched and equipped with government funds, purchased a quantity of methamphetamine that the CS said came from Defendant Martin. The CS also told investigators that several weapons were staged throughout the Residence.

The above controlled purchase was not the only piece of investigatory work conducted by detectives. They researched Defendant Martin's criminal history, finding prior drug and violent convictions. Martin also listed the Residence as his legal address with the State of Ohio.

The Residence itself piqued detectives interest as well. Investigators learned that the Residence had been the subject of "several drug complaints called in to Akron Police Dispatch in 2017," the most recent in June. Investigators also observed counter-surveillance measures installed at the Residence, noting "several surveillance cameras" located throughout.

Additionally, police learned that Defendant Sheridan—Defendant Martin's cousin—lived with Defendant Martin at the Residence. Like his cousin, Defendant Sheridan has a criminal history involving violence and drugs, as well as a probation violation.

Based on the above, Detective Shoaff—a 25-year member for the Akron Police Department with experience in drug and weapon investigations—applied for a Search Warrant. Her application took place within seven days of the controlled purchase described above. A judge from the Akron Municipal Court authorized the Search Warrant the same day, on January 9, 2018. With the Warrant in hand, detectives executed the search the next day on January 10, 2018.

Upon executing the search, investigators uncovered controlled substances and fourteen firearms. This led the Grand Jury to indict both Defendants with one count of Possession with Intent to Distribute Methamphetamine and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Offense.

On October 19, 2020, Defendant Martin filed his second request to suppress evidence found at the Residence. (Doc. 79). Defendant Sheridan joined his cousin's Motion. (Doc. 80). The Government opposed the request to suppress. (Doc. 84).

## II. LAW & ANALYSIS

### A. Standard of Review

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

In *Illinois v. Gates*, the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, **given all the circumstances set forth in the affidavit** before him [or her], …there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

426 U.S. 213, 238-39 (1983) (emphasis added); *see also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *Davidson*, 939 F.2d at 859.

A finding of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. However, reviewing courts must ensure that the issuing magistrate or judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*,

468 U.S. 897, 914 (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (quoting *Gates*, 462 U.S. at 239)).

A reviewing court concerns itself with only those facts which appear within the four corners of the affidavit. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998) (citing *Whitley v. Warden*, 401 U.S. 560, 564-65 (1971)); *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973). There is a presumption of validity with respect to affidavits supporting search warrants. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Finally, it is well-recognized that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation," and courts should "remain cautious not to interpret the language of affidavits in a hyper-technical manner." *Weaver*, 99 F.3d at 1378 (citations omitted).

Like his first motion, Defendant again attacks the controlled purchase, albeit on three different grounds. Defendant claims that, even if the purchase took place, there is no information that the sale occurred within the Residence; there is no information to prove the CS is reliable and credible; and the purchase took place too far removed from the application and is therefore stale. Because there is no probable cause and the officers did not act in good faith, Defendants believe the evidence must be suppressed.

However, Defendants' arguments mischaracterize the Affidavit. When read as a whole, the Affidavit plainly established a substantial basis for the Municipal Judge to conclude that probable cause existed. Therefore, the Court denies the Motion to Suppress.

**B.       The Affidavit Supported the CS's Reliability and the Officer's Corroboration**

Like his first attack, the crux of Martin's second suppression motion focuses on the controlled purchase.  Defendant claims the Affidavit was supported by only one controlled buy by the CS, whose credibility and reliability has not been proved.  But this argument ignores the totality of evidence presented in the Affidavit.

When police present hearsay information from a confidential informant to support a search warrant, courts "must consider the veracity, reliability, and the basis of the knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information."  *Helton*, 314 F.3d at 819.  If an affidavit does not contain "any indicia of the informant's reliability, courts insist that the affidavit contain substantial police corroboration."  *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005).  Thus, the opposite is also true—if an affidavit contains information to support the informant's reliability, independent police corroboration is not a necessity to a finding of probable cause.  *Id.* ("independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause").

Here, the Affidavit contained information to support the CS's reliability.  The CS was known to Detective Shoaff, having provided her with information concerning drug trafficking in the past.  (Doc. 79-1, PageID: 417, ¶ 7).  That information had been corroborated by another Akron detective.  (*Id.*).  So there exists some veracity to the CS statement that Defendant Martin sold him narcotics here.  And the Sixth Circuit has recognized that "[t]he statements of an informant whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight that those of an anonymous source."  *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (quoting *United States v. May*, 399 F.3d

817, 824-25 (6th Cir. 2005)). Accordingly, the Affidavit does contain evidence to support the CS's reliability.

And for good measure, the Affidavit also contains evidence of independent police corroboration. Investigators verified the CS's story during the controlled buy, searching him both before and after the alleged buy, finding narcotics only when the CS came back from the Residence. (Doc. 79-1, PageID: 416, ¶ 2). *See United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003) (finding police corroboration of source via a pat-down both before and after the purchase of narcotics contributed to a finding of probable cause). Moreover, investigators conducted additional research into both Defendants. Detective Shoaff confirmed that both Defendants lived at the Residence. (Doc. 79-1, PageID: 416-17, ¶ 4 & 5). Moreover, police learned that both Defendants had prior criminal records involving illegal drugs and violence. (*Id.*, ¶ 3 & 5). While a prior criminal record by itself is insufficient to establish probable cause, such knowledge is certainly relevant to the probable cause consideration. *United States v. Cupps*, 503 F.2d 277, 281 (6th Cir. 1974). Finally, police uncovered that "several drug complaints" were called into the Akron Police Dispatch in 2017 concerning the Residence. (*Id.*, PageID: 416, ¶ 4; Doc. 84-1, PageID: 450-52). Accordingly, investigators corroborated the CS's information.

Because the Affidavit contained evidence of the CS's reliability and investigators subsequent corroboration, Defendant's challenge fails.

### C. The Affidavit was Specific and Created a Nexus with the Residence

Defendant also complains that the Affidavit lacks specificity. Rather, it is extremely broad and contains boilerplate language. As such, the necessary nexus is lacking because there is no connection between the alleged controlled buy and the Residence.

A finding of probable cause requires "a nexus between the place searched and the evidence sought." *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007). Moreover, "[t]he affidavit must suggest 'that there is a reasonable cause to believe that the specific 'thing' to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of crime.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Standford Daily*, 436 U.S. 547, 556 (1978)).

Here, the Affidavit's introductory paragraph provides the address of the Residence. Next, Detective Shoaff swears the CS "made a controlled narcotics purchase from [Defendant Martin]…at the above address." (Doc. 79-1, PageID: 416, ¶ 2). Finally, because of the CS, Detective Shoaff was aware "that there [were] several weapons staged throughout the [Residence] for accessibility." (*Id.* at PageID: 418, ¶ 13(b)). These facts demonstrate that the CS purchased the narcotics from within the Residence, establishing a reasonable cause to believe that narcotics would be found within the Residence. And with the additional information provided in the Affidavit as discussed above, there was a sufficient nexus between the Residence and the evidence sought by investigators.

Defendant's additional arguments do not change this outcome. The Court finds no issue with the boilerplate language concerning Detective Shoaff's background. Rather, this information provides further context to support the search. The Affidavit at issue is unlike the one in *Weaver*, where the investigator there provided "minimal handwritten information" to supplement a boilerplate affidavit. *Weaver*, 99 F.3d at 1379. Here, Detective Shoaff provided much more additional information, specific to the investigation at hand.

Finally, Defendant's allegation that the Affidavit did not contain "the typical evidence one might expect" to establish probable cause is without merit. "An affidavit is judged on the

adequacy of what it does contain, not on what it lacks, or what a critic might say should have been added." *United States v. Thomas*, 605 F.3d 300, 309 (6th Cir. 2010) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)). Accordingly, the Court reviews the entire Affidavit for what it contains. Doing so leads the Court to find that there was a substantial basis to believe criminal activity or evidence of a crime would be found at the Residence.

**D.**     **The Seven-Day Old Controlled Buy was Not Stale**

Lastly, the evidence of the controlled drug purchase was not stale. In seeking to establish probable cause to obtain a search warrant, "the affidavit may not employ 'stale' information." *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010). In analyzing whether information is stale, the Sixth Circuit considers the inherent nature of the crime and the following factors:

1) The character of the crime – chance encounter in the night or regenerating conspiracy?

2) The criminal – nomadic or entrenched?

3) The thing to be seized – perishable and easily transferable or of enduring utility to its holder? and

4) The place to be searched – mere criminal forum of convenience or secure operational base?

*United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

Defendant contends that evidence of a controlled narcotics purchase within the past seven days is stale and should not be relied on to support a probable cause determination. But he provides no support that evidence gathered within seven days of the application is stale. Instead, Defendant relies on *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006) as support. In *Hython*, while reviewing the district court's good-faith exception application, the Sixth Circuit held that "at least some temporal reference point is necessary to ascertain [the controlled buy's]

existence." *Id.* at 486. "This deficiency alone is sufficient to render the warrant invalid[.]" *Id.* at 487.

However, Detective Shoaff's Affidavit here clearly claims that the controlled-buy occurred "within the past seven days" of January 9, 2018. Unlike *Hython* then, there is a temporal reference. And courts have approved search warrants obtained within seven days of the alleged drug transaction. *See Dyer*, 580 F.3d at 388, n.1 (drug transaction took place "within past seven days"). Defendant cites no authority to the contrary nor further explains how "within the past seven days" is not a temporal reference.

Even if he did, the *Spikes* factors weigh in the Government's favor. Defendants allegedly sold narcotics from their home, had weapons scattered throughout to protect their enterprise and had counter-surveillance measures in place. All these allegations suggest a regenerating conspiracy as opposed to a chance encounter. Moreover, it shows how entrenched Defendants were to utilize the Residence as their secure operational base. While it is true that some of the evidence at issue—i.e., narcotics—is easily transferable, other evidence—i.e., secure firearms—are of a more enduring utility to Defendants. In sum then, the Affidavit did not rely on stale evidence.

### III. CONCLUSION

The Affidavit here provided the Municipal Judge with a substantial basis to conclude probable cause supported the search of the Residence.  Because the Court finds the warrant was supported by probable cause, there is no need to address the issue of whether the good faith exception would apply.  *Dyer*, 580 F.3d at 393; *Pinson*, 321 F.3d at 565.  Therefore, while the Court **GRANTS** Defendant Sheridan's Motion to Join (Doc. 80), the Court ultimately **DENIES** Defendant Martin's Motion to Suppress (Doc. 79).

**IT IS SO ORDERED.**

 s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: May 17, 2021**